TRULS PETERSON *vs.* FIRST DIVISION OF THE ST. PAUL &
PACIFIC RAILROAD COMPANY and others.

October 1, 1880.

**Pre-emption—Construction of Statute—Settlement and Occupancy requisite.—**
Sp. Laws 1862, *c.* 20, § 8, provides that "all persons, or their assigns or
legal representatives, who in good faith settled upon any of the lands
hereby granted to the said The Saint Paul & Pacific Railroad Company at
or prior to the time when the line of said road and branch was definitely
fixed and located, with a view to pre-empt, and who have continued to
occupy the same, shall be at liberty to purchase such land at $2.50 per-
acre, if within the six-mile limits of the line of said road, and if with-
out such limits $1.25 per acre." *Held,* that the line definitely fixed and
located, here meant, is the company's (so-called) preliminary survey of
its line, made in the summer and fall of 1857, and approved by its board
of directors November 9, 1857. Also, that the words "at or prior" do-
not go any further than to include those persons who had settled on the-
lands at any time before such location of the line, and those who were
such settlers at the time of such location. Also, that to have settled on
the lands in good faith and with a view to pre-empt, a person must have-
made an actual genuine and not sham settlement thereon, with the view
and intent of obtaining title thereto by complying with the provisions.
of the pre-emption law of the United States. Also, that upon a consid--
eration of the evidence and findings in this case, the plaintiff was not
a settler upon the lands involved in this action, within the meaning of
section 8, before cited. Also, that the plaintiff is not shown to have.
continued to occupy said land as required by said section.

Plaintiff brought this action in the district court for Meeker-
county to compel the defendant company to convey to him a.
quarter-section of land described in the complaint, on his pay--
ing therefor the sum of $400. The action was tried by *Brown,*
J., who ordered judgment for defendants. A new trial was.
refused, and the plaintiff appealed.

*Gilman & Clough,* for appellant.

*Bigelow, Flandrau & Clark,* for respondents.

BERRY, J. Sp. Laws 1862, *c.* 20, § 8, reads as follows :-
"That all persons, or their assigns, or legal representatives,.
who in good faith settled upon any of the lands hereby granted
to the said The Saint Paul & Pacific Railroad Company, at or-

prior to the time when the line of said road and branch was definitely fixed and located, with a view to pre-empt, and who have continued to occupy the same, shall be at liberty to purchase such land at $2.50 per acre, if within the six-mile limits of the line of said road, and if without such limits, at $1.25 per acre: *provided*, that application therefor, and proof of the right to purchase, shall be made within six months after the fee of said lands shall be acquired by said company."

We will consider first what is meant by the clause, "at or prior to the time when the line of said road and branch was definitely fixed and located." The tense shows that some fixing and location were referred to which had already taken place when the act of which section 8 is a part was passed, March 10, 1862. The only fixing and location which had been made at that time was the St. Paul & Pacific Railroad Company's so-called preliminary survey of its line, made in the summer and fall of 1857, (and over the particular land involved in this action, on the 15th and 16th days of October, 1857,) and approved by the company's board of directors on November 9th of the same year. A duplicate map of this survey and location, duly certified, was filed in the office of the governor of the then territory of Minnesota, November 12, 1857, and another immediately thereafter in the United States general land-office at Washington. This was the location of the line in accordance with which the congressional land grant to said company, under the act of congress of March 3, 1857, and under the act of the legislature of the territory of Minnesota of May 22, 1857, was adjusted, and the lands granted certified to the state of Minnesota, and by the governor conveyed to the successor in interest of said company, to wit, the defendant company. No other survey or location of the line has ever been made with any view of fixing or determining the limits of said land grant, or with any reference thereto. There has been a resurvey, and to some extent relocation, of the line, for purposes of construction and for engineering reasons. The point of commencement of such

resurvey and location, and its general course and terminus, coincide with the original survey and location. The latter was taken as the basis of the relocation upon which the line of road was actually constructed, and was kept as near to as practicable. In view of these facts, found by the court below, which are amply sustained by the evidence, we have no doubt that the line of preliminary (so-called) survey and location was that which the legislature had in mind in section 8, before quoted. It was not only the only line in existence at the time when that section was passed, but it was and has to this day remained as the line definitely fixed and located, as respected the congressional land grant; and it was with reference to lands embraced in that grant that section 8 and the act of which it is a part were enacted. We have no doubt that the line in question was definitely fixed and located, within the meaning of section 8, as early, at any rate, as the 9th day of November, when the survey and location are found to have been approved by the board of directors of the Minnesota & Pacific Railroad Company.

As to the words "at or prior," they are, perhaps, practically somewhat tautological. They are quite commonly associated in legal documents and legislation. Doubtless they were used for this reason, without any critical consideration of their necessity, and they do not, in our opinion, go any further than to include those persons who had settled on the lands at any time before the location of the company's line, and those who were such settlers at the time of such location.

The next question is, had the plaintiff settled upon the land in controversy before the location of the line, in good faith, with a view to pre-empt?

The evidence to support the plaintiff's claim of settlement is this: He testifies: "I came to this country about August 4, 1857. I went on the land in controversy, and made improvements on it, about August 12th, same year. * * * I selected the land in controversy before August 12, 1857, and commenced work on it about the same time. I cut some

rails, and built a shanty on the land, and also cut some brush there, and dug a well. I also, at the same time, set up some poles and rails, and wrote my name on them, to let people know that I claimed the land. It was my intention to make it my home and make it my land." Although he testifies that he has continued to occupy the land up to the time of the trial, and has never abandoned it, there is nothing to show that he made any further improvements upon it until about March 1, 1858, or ever resided upon it until long thereafter. In February, 1858, he filed in the proper local land-office the declaratory statement required by the pre-emption law, in which he states that he has, "on the second day of January, A. D. 1858, settled and improved" the land in question. Upon his cross-examination, plaintiff testified that he first "saw the land between the seventh and twelfth days of August, 1857. On the 13th of August I cut a wagon load of rails, [on the land, as we conjecture,] and I let them lie there until the next spring. I built a shanty in two or three days after cutting the rails. The shanty was twelve feet square. I put hay and brush on it. I put no door, window, floor, stove or chimney in it. I covered it with brushes and hay. I never put any furniture into that shanty. It took two days to build it; no one helped me. I built it in August, 1857. I also dug a well there about three feet deep, and brushed some around some plum trees. That is all I did there in 1857. * * I never slept there until the spring of 1860. I cut about 1,000 rails on the land in the winter of 1857–8. * * I used the 1,000 rails spoken of in building fence on the land the next spring."

Peter Hanson, a witness called by plaintiff, testified upon cross-examination: "I did not see him (plaintiff) build the shanty, but saw the shanty. * * It had no roof, door, window or floor, except a hay roof. He never lived there all the time in that shanty. I never saw him sleep there in it. I have seen him eat there. He lived at my house and brother Ben's house until * * in November." Ben Hanson, another

of plaintiff's witnesses, testified that "the shanty was not built to live in, but to hold the claim." We discover no other testimony in the case which adds anything to what we have above extracted upon the matter of settlement.

The court below found that the plaintiff had not settled upon the lands within the meaning of section 8. The court also finds—and in this is supported by the testimony—that the plaintiff never resided upon the land until 1860. Does the testimony fairly tend to establish a settlement by the plaintiff in good faith, with a view to pre-empt? The legislature has nowhere defined the settlement mentioned; but at the time when the act in which section 8 is found was passed, the United States pre-emption law was, and for many years had been, extant. We refer to the act of congress of September 4, 1841, (5 U. S. St. at Large, 453,) which provided, in section 10, as follows, viz.: "Every person * * * who shall hereafter make a settlement in person on the public lands, * * * and who shall inhabit and improve the same, and who has, or shall erect, a dwelling-house thereon, shall be and is hereby authorized" to enter a quarter-section of public land. As the settlement spoken of in section 8 is a settlement *with a view to pre-empt,* we think it a fair inference that the legislature had in mind such a settlement as would satisfy the United States pre-emption law. To have settled upon any of the land mentioned in good faith, and with a view to pre-empt, a person must have made an actual, genuine, and not sham, settlement thereon, with the view and intent of obtaining title to the same by complying with the provisions of the pre-emption law of the United States. In other words, to avail himself of section 8, the claimant must not only have had a view to pre-empt, but he must have made a settlement in person upon the land.

The intent and acts evincing a settlement must concur, and as in general, so here, the acts are the best test of the reality and genuineness of a claimed intent. Now, what the evidence fairly tends to establish is nothing more than this:

That the plaintiff went upon the land on August 12, 1857; cut some rails; built a rail pen of them; cut some brush and some hay, and put them upon the pen; and dug a hole three feet deep in the edge of a marsh. The rail pen is called a shanty, or house, and the hole a well. The so-called house never was inhabited, nor inhabitable. It was not a house,. but, as one of the witnesses naively remarks, was made, not to live in, but to hold the claim with. It was in no proper sense an improvement; it was a mere sham, as was also the pretended well. Now, so far as we discover, the plaintiff did no other acts upon the premises for which any significance could be claimed prior to November 9th, when the line. of location was approved, except these.

It seems to us that the court below was right in holding that these did not constitute a settlement within the meaning of section 8, and that therefore the plaintiff had failed to bring himself within the provisions of that section. The same result may also be reached, we think, by another line of reasoning. A person, to avail himself of section 8, must "have settled upon" lands "with a view to pre-empt," and "have continued to occupy the same." From when? Evidently from the time of making his settlement; and the occupation must have continued at least down to the time of the location of the line of railroad, if not to the time of applying to purchase the land. If the plaintiff had the title to the land in controversy, he would then have been constructively in possession of it. But he not only did not have the general title, but he had none of any kind, nor any interest in the land. If he did not live upon it—and he did not until 1860—or at least cultivate, or crop it, or work upon it in some way, we are unable to see in what sense he could be said to occupy it. Yet, from about the 15th of August, 1857, he does not appear to have done anything upon it prior to the 9th of November, or, in fact, prior to a considerably later date. Even, then, if the acts which he did in August could be held to constitute a settlement and an occupation, it is apparent that,.

that occupation was not continued as required by section 8. We have no doubt, then, that upon either of the two grounds indicated, the plaintiff fails to bring himself within the benefits of section 8. These views dispose of the case.

Order affirmed.